Argued July 14; affirmed September 6, 1933

## STILLINGER *v.* ASBURY TRANSPORTATION CO. OF OREGON, Inc.

(24 P. (2d) 1021)

*Arthur I. Moulton,* of Portland (Lord & Moulton, of Portland, on the brief), for appellant.

*John S. Coke,* of Portland (Griffith, Peck & Coke, of Portland, on the brief), for respondent.

KELLY, J. The view we take of the law renders it unnecessary to discuss more than one question, which is, whether there is evidence tending to show that the driver of the automobile, in which deceased met his death, was an employee of defendant. For about two weeks before his death, the deceased, Mr. Thomas L. Reid, was employed by defendant as a mechanic. On or about the 6th day of November, 1930, deceased left Portland for Grants Pass in a coupe be-

longing to defendant, taking with him, besides some tools, a piece of machinery spoken of as an assembly for the rear end of a truck. The purpose of his trip was to repair a truck belonging to defendant which had become disabled at Grants Pass. The assembly of the rear end which the deceased took with him did not fit the disabled truck. This piece of machinery was in the coupe at the time of the accident. In its place other parts, which were adaptable to the repairs needed, were sent to deceased by defendant from Portland. After making the repairs, deceased drove to Roseburg. There, Mr. L. R. Chambers found him incapacitated by illness and sitting in the coupe. The deceased inquired of Mr. Chambers if he could secure some one to drive him to Portland. After attempting in vain to persuade deceased to remain in Roseburg and seek medical assistance and treatment, Mr. Chambers asked a young man, who was then employed by Mr. Chambers and who, pursuant to such employment, intended to drive to Portland on the following day, if he would drive for deceased as suggested. To this the young man assented. The accident, which caused the death of deceased, occurred while this young man was so driving.

There were but two sources of authority, if any, for making a contract of employment, on behalf of defendant, with the young man in question. One of such possible sources of authority was the deceased, himself, and the other, Mr. Chambers.

When the deceased came to Portland to work for defendant he was given the authority to employ an assistant at defendant's shop. This he did. The record contains nothing tending to prove that deceased had authority to employ a driver of the car which he was

using to transport himself to and from the particular work to which he had been assigned.

The defendant was engaged in the business of transporting oil by trucks and trailers.

Mr. M. G. Snell, manager of defendant, while testifying for plaintiff, was asked, "Had you ever said anything to Mr. Reid or had Mr. Reid ever said anything to you about him employing anybody to drive that car at any time?" To which he answered, "No, sir".

It is urged that the transactions which defendant had with Chambers were such as to justify the jury in implying the authority upon the part of Chambers to loan a servant to defendant for an emergency service.

Under the assumed name of the L. R. Chambers Motor Car Company, Mr. Chambers had an agreement with defendant to tow defendant's trailers across Winston bridge about six miles south of Roseburg. A rule of the highway department forbade the towing of trailers by trucks over such bridge. At times Chambers also supplied gasoline for defendant's trucks.

On cross-examination Mr. Snell, while a witness in behalf of plaintiff, also testified as follows:

"Q. And was the Chambers Motor Car Company ever given the power or authority to employ anyone on behalf of defendant? A. No, sir.

Q. Nor to appoint any agent. A. No sir".

On redirect, he testified further as follows:

"Q. About all Chambers could do was that if anything arose that needed service, he would send some one of his men out and do it and then charge it up to you?

A. Yes, and these small items, if it was anything worth while he would have to call in to the company.

Q. If it was some small matter he could help you people out, if it didn't involve much expenditure, he would do that for you. A. Yes sir.

A. And you ratified that right along? A. Yes sir.

Q. And had been doing it for years? A. Yes, sir''.

And again on recross-examination:.

''Q. Now, Mr. Moulton referred to the service, what service did the Chambers Company render?

A. Well, they might put in a light globe or a spark plug, or something of that kind.

Q. You mean they furnished you certain items, of parts?

A. Yes, sir.

Q. And they rendered you a bill for them and you paid them? A. Yes, sir.

Q. And the Chambers people never performed any services for the Asbury Transportation Company except a towing service for which a charge was made in each instance.

A. Yes, sir.

Q. And you were billed by the Chambers Motor Car Company regularly for these items? A. Yes, sir.

\* \* \* \* \*

Q. And the towing was done under a contract between the Chambers Motor Car Company and the defendant, in which the Chambers Company charged you so much for each service that it rendered in that respect? A. Yes, sir.

Mr. Coke. That is all.

Redirect examination by Mr. Moulton.

Q. Was the contract in writing? A. No, just verbal.

Q. Now, after you have been cross-examined all of these different times, do you still testify that whenever there was an occasional service rendered in the course of the Asbury Transportation Company's business that didn't involve much expenditure and was in the nature of an emergency, that Chambers done it for you and you people paid it? A. Yes sir.

Mr. Moulton: That is all.

Recross-examination by Mr. Coke.

Q. What kind of service do you refer to?

A. Well, the replacing of spark plugs or light globes, any small repairs of that kind.

Q. Well, did they render any personal services, either Mr. Chambers or any other person so far as —I mean now, so far as 'personal' service, what I am trying to get at is this,—did Mr. Chambers at any time render any personal service to you or perform any labor for you other than the towing of these cars?

A. Yes, he did small jobs.

Q. What kind of jobs were they and how did you pay him for it?

A. Well, I think one time the radius rod broke and he put in some bolts.

Q. He supplied the parts? A. Yes, and some bolts.

Q. Who did the work? A. Mr. Chambers did it.

Q. He did it personally?

A. Well, it was his mechanic that did it.

Q. Was that done, was that service done in any regular employment of Chambers, or in the regular employment of Chambers?

A. That was just an emergency.

Q. A what?

A. What we call an 'emergency', and it had to be done down there, and we had Chambers attend to it.

Mr. Coke: That is all.

Re-direct examination by Mr. Moulton.

Q. In other words, Chambers place was a kind of headquarters for your people in Roseburg?

A. Yes, you might say so; we called on them.

Q. And that had continued for about a year?

A. Yes sir.

Q. So if any emergency arose Chambers would take care of it at Roseburg?

A. Yes sir—no, he would call me up if it was an overhaul or anything that involved very much.

Q. But any small matter, he would do that without calling you, he would do that without calling you?

A. Yes sir.

Q. And you had no special agreement with him as to just how far he could go?

A. Anything that would run into any money, we wanted to know about it.

Q. He didn't want to assume the responsibility for the expenditure of much money? A. No.

Q. And you didn't expect him to? A. No.

Q. But you had no special, or gave no special instructions as to how far he could go? A. No.

Q. You said something about Reid's authority, you never told Reid what his authority was? A. No.

Q. And he was sent up here by Mr. Asbury? A. Yes sir.

Q. And he was sent here to take charge of the trucks in this district? A. Yes sir.

Mr. Moulton: That is all".

We think that the employment of a driver of an automobile to transport a man, then incapacitated by illness, for a distance of two hundred miles could not be deemed to be a small matter such as the furnishing of a spark plug, the installation of a light globe, or the repair of some part of a truck. A contract, establishing the relation of employer and employee and embracing such service is fraught with large contingent liability. This is demonstrated by the instant case which constituted a claim for $50,000. The evidence tends to refute rather than support plaintiff's contention that an inference could be drawn that the driver was an employee of defendant.

The judgment of the circuit court is affirmed.

RAND, C. J., BELT and ROSSMAN, JJ., concur.